UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re:                                              Chapter 7

AGAPE WORLD, INC., et al.,                          Case No. 809-70660-dte
                                                    Substantively Consolidated
            Debtor.

-------------------------------------------------------x
KENNETH P. SILVERMAN, as
Chapter 7 Trustee of Agape World, Inc., et al.
                                                    Adv. Pro. No. 811-9170-reg

                        Plaintiff,
-against-

MEISTER SEELIG & FEIN, LLP,

                        Defendant.
-------------------------------------------------------x


### *Memorandum Decision*

In the substantively consolidated cases of Agape World, Inc., et al. ("Agape"),[1] Kenneth

P. Silverman, the Chapter 7 trustee ("Trustee"), commenced this adversary proceeding against

Meister Seelig & Fein, LLP (the "Defendant"), a law firm that represented Agape during a time

when Agape conducted a massive Ponzi scheme that bilked the public of more than $400

million.  The Agape scheme was based on false representations that investors' funds would be

_____

[1]Unless otherwise specified, "Agape" refers to all of the entities substantively
consolidated in the Agape World, Inc. bankruptcy case (Agape World, Inc., Agape Merchant
Advance LLC, Agape Community LLC, Agape Construction Management LLC, Agape World
Bridges LLC, and 114 Parkway Drive South LLC).

used to make short-term fully collateralized loans to creditworthy borrowers on terms producing significantly higher rates of return to the investors than what was then available. The Trustee seeks to i) avoid payments made to the Defendant by Agape for legal fees incurred by Agape in connection with the Defendant's representation of Agape on a variety of matters and to ii) recover damages for the Defendant's alleged negligence or malpractice in its representation of Agape.  The Trustee also seeks damages from the Defendant under the legal theory of contribution for amounts that Agape's estate is required to disburse in satisfaction of filed claims which will exceed what the Trustee argues is Agape's fair share of such payments.  The Trustee argues that while Nicholas Cosmo, the principal of Agape, was the admitted mastermind of the Ponzi scheme, the Defendant's wrongful acts magnified any losses the investors incurred at the hands of Agape.  The Defendant filed a motion to dismiss the adversary proceeding in its entirety (the "Motion"), pursuant to Fed. R. Civ. P. 12(b)(6), 8 and 9(b), and on the basis that the Trustee lacks standing to bring several of the causes of action. The Defendant also seeks to dismiss the Complaint based on the Trustee's alleged violation of an agreement, pursuant to which the parties stipulated that the Trustee would forbear from filing a complaint, in exchange for an agreement that the applicable statute of limitations would be tolled.

With respect to the avoidance claims, the Court finds that the Trustee has adequately pleaded claims for relief other than the claim for attorneys' fees incurred in connection with bringing the avoidance claims.  For that reason, this portion of the Motion is denied.  With respect to the claims based on the Defendant's alleged negligence, malpractice, or wrongful acts, the Court finds that to the extent the investors and not Agape were harmed by the Defendant's alleged wrongful acts, the Trustee lacks standing to bring such claims and therefore these claims

must be dismissed.  The Court also finds that to the extent Agape itself is deemed to have been injured as a result of wrongful conduct in which Agape participated, the application of the *Wagoner* rule bars the Trustee from asserting such claims.[2]  To the extent that the Trustee alleges in the Complaint that Agape did not participate in or condone the Defendant's alleged failure to properly advise Agape regarding the registration requirements under the federal securities laws, and therefore the *Wagoner* rule does not apply, the Trustee fails to state a claim against the Defendant under the standards enunciated by the Supreme Court in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).  The *Wagoner* rule does not deprive a bankruptcy trustee of standing to sue an entity whose misconduct, in which the bankrupt corporation did not participate,  injured the estate. However, the misconduct as alleged must give rise to a plausible cause of action.  It is not plausible to believe that Agape was injured by the legal advice the Defendant gave to Agape, because the Ponzi scheme included the failure to register the investments as securities at the outset. Without a plausible nexus between the alleged wrongdoing and injury to Agape, this claim must be dismissed as well.

The Court now turns to the contribution claims.  These claims also must be dismissed. While some recent decisions argue a contrary position, the Court believes that a Chapter 7 trustee may have the right to assert a contribution claim under applicable New York law. However, the Trustee's right to assert a cause of action against the Defendant under the theory of contribution does not relieve the Trustee of the obligation to adequately plead each element of the underlying claim giving rise to the right of contribution.  Although courts applying New

---

[2]The *Wagoner* rule is derived from *Shearson Lehman Hutton, Inc., v. Wagoner,* 944 F.2d 114 (2d Cir. 1991) and is discussed *infra.*

York law recognize that contribution claims are not barred by the doctrine of *in pari delicto,* the *Wagoner* rule dictates a different result.  The *Wagoner* rule, which largely applies to the negligence claims underlying the contribution claim, elevates *in pari delicto* beyond a mere defense to a claim, and acts to bar the Trustee from bringing such claims.  Under the facts of this case, in which the Trustee is barred by the *Wagoner* rule from bringing the underlying claims, the contribution claim cannot be maintained.  To the extent any portion of the negligence claim is not barred by the *Wagoner* rule, it is nevertheless  dismissed for failure to state a claim under the standard set forth in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).  The Court declines to determine whether the Trustee breached the tolling agreement, and denies this portion of the Motion.

### Facts

Nicholas Cosmo ("Cosmo") was the president of Agape and operated Agape as a massive Ponzi scheme from 2003 to 2009.[3]  Cosmo predicated the scheme on representing Agape World, Inc. ("Agape World") as a bridge lender providing short-term commercial loans for borrowers otherwise unable to obtain financing from traditional sources. Through Agape World, Cosmo represented to prospective investors that these loans would generate above-market rates of return.  Based on these promises, Agape World raised in excess of $350 million from more than 5,500 investors.  However, it appears that only approximately $18 million was actually employed to fund the aforementioned loans.  To evidence their investments, investors were issued client contracts, which included assurances that their investments were secured by first position asset liens equaling 100% of the investments.  Agape virtually guaranteed rates of return

---

[3]Cosmo was a convicted felon whose broker's license was previously revoked in 2000 and who was barred from future association in any capacity with any member of the National Association of Securities Dealers ("NASD").

of up to 80% over extremely short periods. Cosmo also presented Agape Merchant Advance, LLC ("Agape Merchant") as being in the business of making loans to merchants against credit cards and other receivables.  Agape Merchant raised approximately $50 million from investors, but the books and records of Agape Merchant reflect that only $5 million was invested as represented.  Cosmo used the vast majority of the funds raised by Agape World and Agape Merchant to both support his own lifestyle, which included massive losses resulting from investing in futures trading and commodities trading, and to pay exorbitant commissions and bonuses to brokers, which were a necessary expense in keeping any Ponzi scheme functioning. Initial investors received returns of approximately 12% on their investments, but the "returns" were derived not from any actual loans but rather from money provided by new investors.

In part as a result of the economic turmoil of 2008, Agape found it increasingly difficult to attract a steady stream of new investors, and, as is the fate of all such schemes, it all fell apart. Cosmo was indicted on criminal charges in 2009, and on October 29, 2010, he pleaded guilty to federal charges of mail and wire fraud.  As part of his allocution at sentencing, Cosmo admitted that from 2003 to some point in 2009, he operated Agape as a Ponzi scheme and that his use of Agape's funds to engage in the unauthorized trading in commodities and futures was a part of that scheme.  (Complaint ("Compl."), ¶ 36) (citing to Transcript of October 29, 2010 Plea Hearing in *United States v. Nicholas Cosmo,* Case No. CR - 09-255, United States District Court for the Eastern District of New York).

On February 5, 2009 (the "Petition Date"), an involuntary Chapter 7 petition was filed against Agape World.  On February 12, 2009, an order was entered appointing the Trustee as interim trustee.  On March 4, 2009, an order for relief under Chapter 7 was entered in the Agape

World case.  On April 14, 2009, an order was entered substantively consolidating the Agape

cases.  On January 19, 2011 the Defendant and the Trustee entered into a Tolling and

Forbearance Agreement ("Tolling Agreement"), stipulating and agreeing that the Trustee would

forbear from filing a complaint, and in exchange, the Defendant agreed that the statute of

limitations applicable to the claims which are the subject of this adversary proceeding would be

tolled.  The dates set forth in the Tolling Agreement were extended by agreements dated April

18, 2011 and May 17, 2011.  On June 22, 2011, within the deadline set forth in the Tolling

Agreement, as extended, the Trustee commenced the instant adversary proceeding against the

Defendant.

The Complaint contains the following allegations:

　　　1. The Defendant was retained in February 2007 to represent Agape.  From February

2007 to January 2009, the Defendant represented Agape in at least thirty-eight separate matters,

including representing Agape as the mortgage lender in thirty loan transactions, the formation of

Agape Merchant, representing Agape in the direct purchase of certain real estate properties,

providing legal advice regarding certain equity investments, reviewing Agape's form of investor

contract and advising Agape as to whether it was subject to the requirements of the securities

laws, representing Agape in its efforts to receive financing from third parties, and providing legal

advice regarding Agape's business practices.  Over the course of its retention by Agape, the

Defendant billed and collected approximately $400,000 in fees and costs from Agape (the

"Billing Transfers").

　　　2.  The Defendant was fully aware that Agape raised its money from individual investors,

and that some of these funds were used to provide loans and acquire real estate.  In the summer

of 2007, Cosmo was warned by a lender that Agape was selling "securities" that required

registration under the Securities Act of 1933 (the "Securities Act").  Cosmo responded that he

had sought advice from the Defendant, and the Defendant advised him that Agape did not have

to register the investments as securities.  After the meeting, Cosmo inquired again from the

Defendant whether Agape needed to register the investments, and was again assured that Agape

did not need to register.  (Compl., ¶ 49).   On June 27, 2007, Cosmo provided the Defendant with

a copy of the two-page investment agreement Agape required its investors to sign, in order for

the Defendant to determine whether the form of the contract was "legal and appropriate."

(Compl., ¶ 42).   The investment contract contained the representation that "Agape World, Inc.

does not purchase, sell, or mortgage any real estate or any other similar vehicles including stocks

and equities."  (Compl., ¶ 48).  The Defendant verbally advised Cosmo that Agape did not need

to register the investments with the Securities and Exchange Commission ("SEC"), and

reiterated this advice on April 1, 2008.  (Compl., ¶ 49).  At some point in October 2008, the

following disclaimers, initially drafted by the Defendant, were added to the emails sent by

Agape:

> This literature is provided for informational purposes only, and does not
> constitute an offer or solicitation to buy or sell any security discussed
> herein or in any jurisdiction where such would be prohibited.

The Trustee alleges in the Complaint that Agape was in fact offering to sell and selling

securities, which were subject to the registration requirements of the federal securities laws

unless they qualified for an exemption.  Section 2(a)(1) of the Securities Act defines "security"

to include any "investment contract."  The investor contract used by Agape constituted a security

because "(a) Agape solicited money from investors (b) who had an expectation of profits arising

from (c) a common enterprise (d) through the efforts of third parties." (Compl., ¶ 52).

Furthermore, the investor contract did not fall within any of the exempted categories of securities

identified in the Securities Act.  In November 2008, contrary to its initial advice, the Defendant

advised Cosmo that the offerings did constitute securities that needed to be registered with the

SEC.  Even if the securities were exempt from registration with the SEC, they would be subject

to the anti-fraud provisions of the Securities and Exchange Act (the "Exchange Act").

       3.  According to the allegations contained in the Complaint, had the Defendant advised

Cosmo that he needed to register under the Securities Act, and had Cosmo followed the advice,

the scheme would have ended as early as 2007 because Agape lacked certified financial

statements, which were required in order to register the offering as securities.  Had the

Defendant advised Cosmo that Agape needed to register under the Securities Act, and if Cosmo

failed to heed the Defendant's advice, the Trustee asserts that the Defendant would have had an

affirmative obligation under DR 7-102 of the New York Code of Professional Responsibility (22

NYCRR 1200.33) to disclose Cosmo's actual and intended crimes to the investors.  (Compl., ¶¶

55 - 58).

       4.  In June 2007, the Defendant assisted in Cosmo's purchase of a house located in

Levittown, New York, which house was later transferred to an Agape SPE, and during the course

of the purchase, the Defendant discovered Cosmo's prior conviction for mail fraud in 1999.  The

Defendant also discovered that Cosmo had an outstanding judgment against him in the amount

of $212,788.98 based on the prior mail fraud conviction.  The Defendant took no steps to protect

Agape from potential liability or issues arising from having a convicted felon in Cosmo's

position at Agape, and never discovered that Agape's broker's license was revoked in 2000 as a

result of the conviction.  The Defendant was aware that Cosmo falsely claimed that the judgment had been paid, and on October 3, 2007, Cosmo delivered a bank check to the Defendant in the amount of $212,788.98 drawn on Agape's corporate account payable to the order of the Department of Justice.  The Defendant took no action to report the withdrawal despite the fact that Agape's funds were being used by Cosmo for his own personal benefit. (Compl., ¶¶ 59 - 65).

5.  Cosmo opened trading accounts in the name of Agape World —using Agape funds—at a series of futures commission merchants ("FCMs") and the Defendant was aware, or should have been aware, that Cosmo's use of Agape funds to open trading accounts was unauthorized.  The Defendant knew or should have known that the Agape funds could only be used to make short term bridge loans and yet did nothing to reveal Cosmo's actions.  (Compl., ¶¶ 66 - 70).

6.  On November 13, 2007, Cosmo emailed the Defendant and asked for an opinion letter from the Defendant stating that Cosmo was the 100% owner of Agape World, the funds of Agape World were his, and Cosmo was permitted to use the funds of Agape World to conduct futures trading.  The Defendant never prepared such an opinion letter, but continued to permit the Defendant's name to be used in emails that created the appearance that the Defendant agreed with Cosmo's false statements.  (Compl., ¶¶ 71 - 75).

7.  Cosmo's conduct violated sections 4b(a)(2)(i) and (iii) of the Commodity Exchange Act, which make it unlawful for any person, in or in connection with any order, to make any contract for the sale of any commodity, to cheat or defraud another person or willfully deceive or attempt to deceive any person with regard to any act of agency performed or with respect to any order for another person.  But for the Defendant's assistance in concealing the fact that Agape's

funds did not belong to Cosmo, Cosmo would not have been able to engage in unauthorized and undisclosed futures trading.  (Compl., ¶¶ 76 - 77).

8.    The Defendant knew or should have known that Agape's investor contract and website included false representations regarding the nature of Agape's investments, and had the Defendant advised Agape to correct these misstatements or had the Defendant reported Cosmo's crimes, Cosmo's scheme would have ended sooner.  (Compl., ¶¶ 78 - 84).

9.    In October 2008, the Defendant received inquiries from Agape's investors regarding the scope of the Defendant's representation of Agape and complaints regarding Agape's practices.  Agape had sent letters to its investors dated October 8, 2008, representing that Agape was "backed by one of New York's top real estate law firms, Meister, Seelig & Fein, LLP." (Compl., ¶ 87).  After receiving a copy of this letter, the Defendant researched the applicable securities laws and concluded by at least mid-November 2008 that Agape was selling securities, and the securities were unregistered and non-exempt.  The Defendant requested that Agape make a correction to the letters being sent to investors solely to reflect that the Defendant "represented" Agape in lending transactions.  (Compl., ¶¶ 91 - 96).

10.    On January 22, 2009, the Defendant withdrew from its representation of Agape. Between October 8, 2008 and January 30, 2009, total transfers of approximately $46 million were made from Agape accounts.  Of that amount, approximately $12.8 million was transferred to Agape brokers and other insiders and approximately $2 million was transferred to FCMs. According to the Complaint, the Defendant's actions "enabled, concealed and prolonged Cosmo's fraudulent schemes."  (Compl., ¶ 107).  Agape received no benefit from Cosmo's actions.  Agape's innocent investors and officers could have prevented or mitigated their losses

had the Defendant notified them of Cosmo's scheme.  The Defendant should have reported Cosmo's crimes to the Commodities Futures Trading Commission ("CFTC") or to local criminal authorities.

11.  In addition to the Billing Transfers received by the Defendant from Agape, the Defendant withdrew $5,000 on October 11, 2007 and $23,574.87 on March 19, 2008 from its IOLA as legal fees in connection with the 137 Cardinal Road transaction, which constituted legal fees to the Defendant. (The October 11, 2007 transfer and the March 19, 2008 transfer, together, are the "Cardinal Road Transfers").  (Compl., ¶ 111).

In Counts One through Six of the Complaint, the Trustee seeks to avoid and recover the Billing Transfers and the Cardinal Road Transfers pursuant to Bankruptcy Code §§ 548(a)(a)(A), 548(a)(1)(B), and New York Debtor and Creditor Law §§ 273, 274, 275 and 276.  In Count Seven, the Trustee seeks an award of legal fees to the extent the Trustee is successful in its claim under § 276 of the DCL ( Counts One through Seven are collectively referred to as the "Fraudulent Transfer Claims").  In Count Nine, the Trustee seeks damages in an unspecified amount based on the Defendant's alleged legal malpractice and/or negligent representation of Agape.  In Count Ten, the Trustee seeks damages in an unspecified amount and the equitable remedy of forfeiture in the form of disgorgement of all professional fees the Defendant received from Agape, based on the Defendant's alleged breach of its fiduciary duties owed to Agape.  In Count Eleven, the Trustee seeks damages in an unspecified amount based on the Defendant's alleged aiding and abetting Cosmo's breach of the fiduciary duty he owed to Agape.  In Count Eight, the Trustee seeks to recover from the Defendant damages in an unspecified amount based on the Trustee's right to seek contribution under Section 1401, et. seq., of the New York Civil

Practice Law and Rules ("CPLR").  C.P.L.R. § 1401, et. seq. (McKinney 1997).  The Trustee

asserts that under the New York contribution statute, the Trustee is entitled to recover from the

Defendant any amounts the Trustee pays in excess of its fair share for wrongs involving the

Defendant as a joint or concurrent tortfeasor as described in Counts Nine and Eleven.

On July 19, 2011, the Defendant filed a motion seeking to withdraw the adversary

proceeding from the Bankruptcy Court to the District Court for the Eastern District of New

York, which is currently pending before Judge Joseph Bianco.  On July 19, 2011, the Defendant

filed a motion seeking to stay this adversary proceeding pending resolution of the motion to

withdraw the reference.  At a hearing held on July 25, 2011 before Judge Dorothy Eisenberg, the

Court denied the Defendant's motion seeking a stay, and directed the Defendant to file an answer

or otherwise move on or before August 8, 2011.  On August 8, 2011, the Defendant filed the

Motion.  By order entered on September 12, 2011, this adversary proceeding was reassigned

from Judge Eisenberg to Judge Grossman.  On September 13, 2011, the Trustee filed opposition

to the Motion, reply papers were filed, and a hearing was held on October 19, 2011.   On

November 14, 2011, the Defendant and the Trustee each filed supplemental memoranda of law.

Thereafter, the matter was marked submitted.

### *Discussion*

### *1) Standard for Motion to Dismiss*

A motion to dismiss for failure to state a cause of action under Federal Rule of Civil

Procedure 12(b)(6) ("Rule 12(b)(6)"), made applicable to this adversary proceeding by Fed. R.

Bankr. P. 7012, requires a determination as to whether the complaint properly states a claim

under Fed. R. Civ. P. 8 ("Rule 8").  *See* Fed. R. Bankr. P. 7008.  Under Rule 8, a complaint must

contain a "short and plain statement of the claim showing the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).  Recently, the Supreme Court has twice taken up the requirements of Rule 8.  *See  Ashcroft v. Iqbal*, 556 U.S. at 662; *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  In both cases, the Supreme Court emphasized two principles which form the basis for determining a Rule 12(b)(6) motion.

First, the tenet that a court must "accept all factual allegations as true" is limited to factual allegations, and does not apply to legal conclusions listed in the plaintiff's complaint. *Ashcroft v. Iqbal*, 556 U.S. at 668 (2009).  The Court explained that legal conclusions are not entitled to the assumption of truth:   "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.,* 556 U.S. at 676.

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*  The Supreme Court has explained that "[t]he plausibility standard is not akin to a probability requirement, but asks for more than a sheer possibility." *Id.*

This two-pronged approach now forms the standard to be applied when courts are determining a motion to dismiss for failure to state a cause of action.  *Id.*  Courts must focus only on the allegations in the complaint which are entitled to the assumption of truth, "discounting legal conclusions clothed in the factual garb." *Gowan v. Novator Credit Mgmt.* (*In re Dreier LLP*), 452 B.R. 467, 475 (Bankr. S.D.N.Y. 2011).  Based on these well-pleaded factual allegations, courts must determine if the complaint states a plausible claim for relief.  *See Id.* Determining whether a complaint states a plausible claim is "context specific, requiring the court

to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 668. However, the "pleadings must create the possibility of a right to relief that is more than speculative." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). A complaint has facial plausibility when "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal* 556 U.S. at 668.

Additionally, courts must "draw inferences . . . in the light most favorable to the [nonmovant], and construe the complaint liberally." *Gowan v. Novator Credit Mgmt* 452 B.R. at 476 (quoting *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir. 2001) (other citations omitted)). Finally, "courts must consider the complaint in its entirety." *Tellabs, Inc v. Makor Issues & Rights, Ltd.* 551 U.S. 308, 310 (2007). The court may take judicial notice of the public record in related cases involving one of the parties. *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006). A court may even consider a document that has not been incorporated by reference "'where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.'" *Buena Vista Home Entm't, Inc. v. Wachovia Bank, N.A. (In re Musicland Holding Corp.),* 374 B.R. 113, 119 (S.D.N.Y. 2007) (citing *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002) (other citations omitted)).

Fed. R. Civ. P. 9(b), which is applicable in this case pursuant to Bankruptcy Rule 7009, governs claims for intentional fraudulent transfers. *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs Ltd.)*, 337 B.R. 791, 801 (S.D.N.Y. 2005). The first, sixth and seventh claims arise under Bankruptcy Code § 548(a)(1)(A) and DCL §§ 276 and 276-a, and each claim requires a finding of intent by the transferor to defraud. *Picard v. Madoff, et al. (In re Bernard L. Madoff Inv. Sec. LLC)*, 458 B.R. 87, 105 (Bankr. S.D.N.Y. 2011) ("*Picard v. Madoff*") (citing

*Gowan v. The Patriot Group, LLC (In re Dreier LLP)*, 452 B.R. 391, 424 (Bankr S.D.N.Y. 2011)).   As actual intent fraudulent transfers, these claims must meet the heightened specificity requirements under Fed. R. Civ. P. 9(b).   *Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).   However, where a bankruptcy trustee is the party asserting the actual fraudulent transfer claim, the Second Circuit has adopted "'a more liberal view . . . since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge.'"   *Picard v. Cohmad Sec. Corp. et al. (In re Bernard L. Madoff  Inv. Sec. LLC)*, 454 B.R. 317, 329 (Bankr. S.D.N.Y.  2011) (*"Picard v. Cohmad"*) (citing *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) (other citations omitted)).

### 2. Actual Fraudulent Transfer Claims

In Counts One and Six of the Complaint, the Trustee seeks to recover the Billing Transfers and the Cardinal Road Transfers as actual fraudulent transfers under Bankruptcy Code §§ 544, 548(a)(1)(A), 550 and DCL § 276.[4]   The Trustee also seeks to recover his attorneys' fees pursuant to DCL § 276-a.[5]   Both the Trustee and the Defendant agree that in the context of an

---

[4]DCL section 276 provides:
Conveyance made with intent to defraud.  Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors. (McKinney 2006)

[5]DCL section 276-a provides:
Attorneys' fees in action or special proceeding to set aside a  conveyance made with intent  to  defraud.
In an  action  or  special  proceeding  brought  by  a creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors to set aside  a  conveyance  by  a  debtor, where such conveyance is found to have been made by the debtor   and received by the transferee with actual intent, as distinguished from  intent presumed in law, to hinder, delay or defraud  either  present

admitted Ponzi scheme such as this, transfers made by a Ponzi entity are presumed to have been made with actual intent to hinder, delay or defraud creditors under the relevant Bankruptcy Code provisions and applicable New York Debtor and Creditor law. *Picard v. Cohmad,* 454 B.R. at 330; *McHale v. Boulder Capital LLC (In re The 1031 Tax Grp. LLC, et al.*), 439 B.R. 47, 72 (Bankr. S.D.N.Y. 2010). The "Ponzi scheme presumption" works to establish fraudulent intent on the part of the transferor as a matter of law. *Picard v. Madoff,* 458 B.R. at 104. The Ponzi scheme presumption applies only to the transferor's intent, and there is no requirement under these Bankruptcy Code sections or under DCL § 276 that the Trustee prove that the transferee acted with fraudulent intent as well. *Picard v. Cohmad,* 454 B.R. at 331 ("[I]t is the transferor's intent alone, and not the intent of the transferee, that is relevant under NYDCL § 276.").[6] The sole exception to the Ponzi scheme presumption is where the transfers at issue are so unrelated to the Ponzi scheme that the transfers do not serve to further the Ponzi scheme. *Picard v. Madoff,* 458 B.R. at 105 (citing *In re Manhattan Inv. Fund Ltd.,* 397 B.R. 1, 11 (S.D.N.Y. 2007)).

The Defendant makes two arguments in favor of dismissing these claims. First, the Defendant asserts that the Complaint contains no plausible allegations that the Defendant had actual knowledge of the underlying fraudulent scheme or that the Defendant rendered substantial

---

or future creditors, in which action or special proceeding the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall recover judgment, the justice or surrogate presiding at the trial shall fix the reasonable attorney's fees of the [bankruptcy trustee].
(McKinney 2006).

[6]Count Seven, pursuant to which the Trustee requests attorneys' fees pursuant to DCL § 276-a, requires a finding that the transferee receive the transfer with actual intent to defraud. However, this Count is only applicable if the Trustee is successful in Count Six pursuant to DCL § 276. *Picard v.Cohmad,* 454 B.R. at 332, n. 10 (citing *In re Dreier LLP,* 452 B.R. 391, 430 (Bankr. S.D.N.Y. 2011)).

assistance to the underlying scheme.  However, case law is clear that the intent of the transferee is irrelevant to establishing a *prima facie* claim under these intentional fraudulent conveyance actions, under either the Bankruptcy Code or DCL § 276.  *Picard v. Madoff,* 458 B.R. at 105 (other citations omitted).  Second, the Defendant argues that the defense set forth in Bankruptcy Code § 548(c), which is available for transferees who received transfers for value and in good faith, precludes the Trustee from asserting a claim under Bankruptcy Code § 548(a)(1)(A).  In addition, the Defendant asserts that the parallel statute under the DCL, which provides that a conveyance can be recovered from any person "except a purchaser for fair consideration without having knowledge of the fraud at the time of the [transfer] . . . " insulates the Defendant from any claim by the Trustee under DCL § 276 and 276-a.

While the Defendant's argument regarding good faith and fair consideration is a permissible defense to these actual fraudulent transfer claims, and may be raised at the summary judgment stage and/or at trial, it is only sufficient to dismiss these claims at this stage if it appears from the face of the Complaint that the Defendant took the funds in good faith and for fair consideration.  *Picard v. Madoff,* 458 B.R. at 105, n. 10 (citing *Pani v. Empire Blue Cross Blue Shield,* 152 F.3d 67, 74-75 (2d Cir. 1998)).  The Trustee sufficiently alleges the Defendant had knowledge of Agape's wrongdoing and also alleges that Agape received less than fair consideration in exchange for the Billing Transfers and the Cardinal Road Transfers.  Therefore, the Defendant's affirmative defense does not warrant dismissal of the actual fraudulent transfer claims.

Count Seven, which is dependent upon a finding of liability under DCL § 276, also requires a finding that the Defendants received the transfers with fraudulent intent.  Because the

Trustee does not allege in the Complaint that the Defendant acted with intent to defraud, this claim shall be dismissed pursuant to Rule 9(b), and the Trustee may not recover attorneys' fees in this action.

### 3. *Constructive Fraudulent Transfer Claims*

The Trustee has sufficiently pleaded Counts Two, Three, Four and Five of the Complaint pursuant to §§ 548(a)(1)(B), 544, 550(a) and 551 of the Bankruptcy Code and §§ 273, 274, 275, 278 and/or 279 of the DCL to avoid and recover the Billing Transfers and the Cardinal Road Transfers from the Defendant as constructive fraudulent transfers.  The heightened pleading standards applicable to actual fraudulent transfer claims under Fed. R. Civ. P. 9(b) are inapplicable to these counts.  *Picard v. Cohmad*, 454 B.R. at 332 (citing *Bank of Commc'ns v. Ocean Dev. Am., Inc.,* No. 07-CIV-4628, 2010 WL 768881, at *6 (S.D.N.Y. Mar. 8, 2010) (other citations omitted)).  Thus, the Trustee need only set forth a short statement of the claim showing that the Trustee is entitled to relief, which gives the defendant "'sufficient notice to prepare an answer, frame discovery and defend against the charges.'" *Id*. (quoting *Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.*), 222 B.R. 417, 429 (Bankr. S.D.N.Y. 1998)).

In Count Two, the Trustee must allege that Agape did not receive "reasonably equivalent value" for the Billing Transfers and the Cardinal Road Transfers.  11 U.S.C. § 548(a)(1)(B).  In Counts Three through Five, the Trustee must allege that the Defendant did not receive "fair consideration." DCL § 272.  The Trustee has adequately pleaded lack of 'fair consideration' so long as the Trustee alleges lack of 'fair equivalent' value or a lack of good faith by the transferee.  *Picard v. Cohmad*, 453 B.R. at 333.  Courts have concluded that 'reasonably

equivalent value' under § 548(a)(1)(B) and 'fair consideration' under DCL are fundamentally the same. *Id.* (citing *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortg. Inv. Corp.)*, 256 B.R. 664, 677 (Bankr. S.D.N.Y. 2000)), *aff'd*, *Balaber-Strauss v. Lawrence,* 264 B.R. 303 (S.D.N.Y. 2001) ("*Churchill*")).

The Defendant argues that as the recipient of its legal services, Agape received sufficient consideration as a matter of law.  Therefore, Counts Two through Five must be dismissed for failure to state a claim. The Court does not find the Defendant's argument dispositive at this stage of the adversary proceeding.  In order to determine whether Agape received 'reasonably equivalent value' or 'fair consideration' in exchange for the Billing Transfers and the Cardinal Road Transfers, the Court must examine the entire circumstances surrounding each of the transfers.  *Picard v. Cohmad*, 454 B.R. at 334 (other citations omitted).  As Judge Lifland held in *Picard v. Cohmad*:

> In this case, where the reasonably equivalent value analysis requires more than a simple math calculation, it is inappropriate [to undertake this analysis] at the motion to dismiss stage.  *See Global Crossing Estate Rep. v. Winnick*, No. 04-CIV-2558, 2006 WL 2212776, at *9 (S.D.N.Y. Aug. 03, 2006) ("[T]he question whether 'fair consideration was received is a factual one, and thus even where on the surface it would appear that such is the case (for example, the [defendants] point out that during the period, [the debtor] managed to raise billions of dollars in capital, precisely what it had asked the [defendants] to accomplish, it would be premature to dismiss these claims."); *In re Acrade Fin. Techs. Ltd.*, 337 B.R. at 804 ("[T]he question of 'reasonably equivalent value' . . . is fact intensive, and usually cannot be determined on the pleadings.").

*Id.*

So it is with the case before the Court. While a law firm is entitled to be paid for services rendered, the Trustee has adequately pleaded that the Defendant provided less than fair consideration in exchange for the Billing Transfers and the Cardinal Road Transfers because the

Defendant acted negligently in its representation of Agape. This is in direct contrast to the findings of fact in *Churchill*, as case upon which the Defendant relies to support its argument. In *Churchill,* the Chapter 7 trustee did not allege in his complaint that brokers to a Ponzi schemer provided less than fair consideration for the commissions they received while performing their duties. In addition, the trustee in *Churchill* conceded that the brokers earned what they were paid without committing any wrongdoing, not even negligence, and faithfully carried out their duties. *Churchill,* 256 B.R. at 684. For purposes of analyzing the instant motion the Court is pursuaded that Trustee has properly and adequately pleaded lack of reasonably equivalent transfers with respect to Counts Two through Five.

### 4. *Counts Eight Through Eleven*

In Counts Nine through Eleven of the Complaint, the Trustee seeks to recover damages from the Defendant predicated on the Defendant's alleged malpractice, breach of fiduciary duty to Agape, and the Defendant's aiding and abetting Cosmo's breach of his fiduciary duty to Agape. In each of these counts, the Trustee alleges that Agape has been damaged in amounts to be determined at trial. In addition, under the breach of fiduciary duty claim set forth in Count Ten, the Trustee seeks the equitable remedy of forfeiture of all legal fees paid by Agape to the Defendant. In Count Eight of the Complaint the Trustee seeks to recover from the Defendant, as a tortfeasor, amounts the Trustee may overpay in the future to Agape investors in this bankruptcy case based on the estate's proportionate share, under the theory of contribution set forth in section 1401 of the New York CPLR.

The Defendant asserts as a threshold issue that Counts Nine through Eleven must be dismissed because the Trustee lacks standing to bring each of these causes of action. The

Defendant argues that as a matter of law the Trustee may not recover under these counts as any injuries were incurred by Agape's investors, not by Agape.  Because a Trustee only has standing to seek damages based on injuries to Agape, these causes of action must be dismissed.  The Defendant also asserts that to the extent the Trustee seeks to recover for injuries to Agape, these claims are barred by the *Wagoner* rule.  Under the *Wagoner* rule, a bankruptcy trustee lacks standing to seek recovery on behalf of a debtor company against third parties for injuries incurred by the misconduct of the debtor's controlling managers.  *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991);  *In re The Bennett Funding Group, Inc,* 336 F.3d 94, 99-100 (2d Cir. 2003).   Because Cosmo, as the sole principal of Agape, was the orchestrator of the Ponzi scheme, the Trustee is not entitled to recover against the Defendant as participants in the scheme for any injuries it may have sustained.   The Defendant is correct that standing is a threshold issue, and if the Trustee lacks standing to bring these claims, the Bankruptcy Court has no subject matter jurisdiction to adjudicate these claims.  *McHale v. Citibank, N.A. (In re the 1031 Tax Group, LLC),* 420 B.R. 178, 191-92 (Bankr. S.D.N.Y. 2009) (other citations omitted). In order to rule on this issue, the Court must examine the Trustee's standing to bring these causes of action, using the following as a guideline.

### a)  *Standing*

Standing is a jurisdictional issue under Article III of the Constitution.  *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d at 119; *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc*., 454 U.S. 464, 471-476 (1982).  "To have standing, 'a plaintiff must [1] allege personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief.'" *Hirsch v. Arthur Anderson &*

*Co.,* 72 F.3d 1085, 1091 (2d Cir. 1995) quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984).

The doctrine of standing "incorporates both constitutional and prudential limitations on federal court jurisdiction." *Wight v. BankAmerica Corp.,* 219 F.3d 79, 89 (2d Cir. 2000). Under Article III of the Constitution there must be a case or controversy to invoke a federal court's jurisdiction, which requires, among other things, that the party invoking the power of the court has a personal stake in the outcome of the case or controversy. *Id.* As such, the legal rights asserted by the plaintiff must be his or her own. *Warth v. Seldin* 422 U.S. 490, 499 (1975); *Wight v. BankAmerica Corp.,* 219 F.3d at 91; *Breeden v. Kirkpatrick & Lockhart, LLP,* 268 B.R. 704, 709, (Bankr. S.D.N.Y. 2001); *Caplin v. Marine Midland Grace Trust Co. of New York,* 406 U.S. 416, 428 (1972). The prudential limitations of standing "are 'judicially self-imposed limits on the exercise of federal jurisdiction,' . . . and exist to preserve 'the proper—and properly limited—role of courts in a democratic society.'" *McHale v. Citibank, N.A. ,* 420 B.R. at 192 (quoting *Selevan v. N.Y. Thruway Auth.,*584 F.3d 82, 91 (2d Cir. 2009) and *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (other citations omitted)). Included among the prudential limits to standing is the *Wagoner* rule, which provides that a trustee standing in the shoes of the bankrupt corporation lacks standing to assert claims against third parties for assisting in defrauding the corporation where the alleged fraud is conducted by management. *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d at 120. The *Wagoner* rule applies in the Second Circuit, and courts in this Circuit have consistently adhered to the *Wagoner* rule, despite the fact that many other Circuit courts do not follow this approach, and treat this as an affirmative defense under the *in pari delicto* doctrine. *McHale v. Citibank, N.A.,* 420 B.R. at 197 (other citations omitted).

In order to determine whether the Trustee is asserting his legal rights, the Court must

examine what rights are conferred upon a bankruptcy trustee. "Under the Bankruptcy Code the trustee stands in the shoes of the bankrupt." *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d at 118.  As such, the trustee has access to all legal and equitable interests the debtor had, including the right to bring any suit that the debtor could have instituted had it not filed for bankruptcy. *Caplin v. Marine Midland Grace Trust Co. of New York,* 406 U.S. 416, 428 (1972); *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d at 120.  While section 544(b) of the Bankruptcy Code authorizes the trustee to avoid transfers that a creditor of the debtor with an allowed claim could avoid under applicable law, section 544 is limited to avoidance actions, and "does not permit the trustee to assert the personal, direct claims of creditors for the benefit of the estate or for a particular class of creditors." *Goldin v. Primavera, et al. (In re Granite Partners, L.P.),* 194 B.R. 318, 324 (Bankr. S.D.N.Y. 1996) (citing *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d at 118; *Caplin v. Marine Midland Grace Trust Co. of New York,* 406 U.S. at 434; and *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 985 (11th Cir. 1990)).  Thus, it is necessary to establish which rights belonged to Agape at the time of filing in order to determine which rights the Trustee now has standing to assert.

Applicable state law determines if a right to sue belongs to a debtor, or to the creditors of that debtor. *Mediators, Inc. v. Manney* (*In re Mediators, Inc.*) 105 F.3d 822, 827 (2d Cir. 1997); *Hirsch v. Arthur Andersen & Co.,* 72 F.3d at 1093; *Breeden v. Kirkpatrick & Lockhart, LLP,* 268 B.R. at 710.  In this case, we look to New York State law to determine whether the Trustee has the right to bring the remaining causes of action set forth in the Complaint.

### i) Counts Nine Through Eleven

As alleged in Count Nine, the Defendant committed legal malpractice when it advised

Agape that it was not required to register the investor contracts under the Securities Act, when it failed to advise Agape to correct misrepresentations Agape made to the public regarding Agape's business activities and the sale of unregistered securities, and when it assisted Cosmo in the unauthorized withdrawal of funds from Agape's account for trading in the commodities and futures markets.  According to the allegations set forth in Count Ten, the Defendant breached its fiduciary duty of care, loyalty, candor and communication when it failed to report Agape's unauthorized commodities and futures trading to Agape's investors and officers, the FCMs, and/or the Commodities Futures Trading Commission ("CFTC").  In Count Eleven, the Trustee alleges that the Defendant aided and abetted Cosmo's breach of his fiduciary duties to Agape when the Defendant "facilitated" Cosmo's sale of unregistered securities through Agape, and when Cosmo used Agape's funds in an unauthorized and illegal manner, exposing Agape to investor liability.

Counts Nine, Ten and Eleven can be broken down into the following categories.   First, the Trustee alleges that the Defendant aided and abetted or otherwise assisted Cosmo in his scheme to loot Agape for his personal benefit.  Second, the Trustee alleges that the Defendant committed malpractice when it advised the Debtor that it was not required to register the sale of the investments with the SEC, thus exposing Agape to liability from the defrauded investors.  Third, the Trustee alleges that the Defendant aided and abetted Cosmo's scheme to sell unregistered securities through Agape.

As for claims that the Defendant aided and abetted or otherwise assisted Cosmo in his scheme to loot Agape for his personal benefit, the application of the *Wagoner* rule acts to bar the Trustee from bringing these claims.  Cosmo's scheme to divert the assets from Agape is imputed

to Agape under the theory of agency. This imputation acts to prevent the Trustee from suing to recover for a wrong in which the Trustee is deemed to have participated. *Wight,* 219 F.3d at 87.

The Trustee argues that because Cosmo acted solely in his own self-interest when he looted the assets of Agape, the theft cannot be deemed to be for any legitimate corporate purposes, and his actions were adverse to Agape's. Therefore, the Trustee claims that these causes of action fall within the adverse-interest exception to the *Wagoner* rule. Under the adverse-interest exception, the presumption that the acts and knowledge of an agent acting within the scope of employment are imputed to the principal is rebutted. *Mediators,* 105 F.3d at 827 (citing *Center v. Hampton Affiliates,* 66 N.Y.2d 782, 784, 497 N.Y.S.2d 898, 488 N.E.2d 828 (1985)). The exception is only applicable where an agent by his or her actions has "totally abandoned" the principal's interests. *Id.* (citing *Center v. Hampton Affiliates,* 66 N.Y.2d at 784-85. While Cosmo's looting of Agape may fit within this exception, this exception does not apply where the principal is a corporation, and the agent is its sole shareholder. *Mediators,* 105 F.3d at 827. This exception to the exception is known as the "sole actor" rule. *Id.* (citing Harold Gill Renschlein & William A. Gregory, *The Law of Agency and Partnership* § 64 at 121 (2d ed. 1990)). Under the "sole actor" rule, where the principal and agent are one and the same, which is the case here, the agent's knowledge is imputed to the principal notwithstanding the agent's self-dealing. One rationale for the sole actor rule is that an agent's knowledge should be imputed to the principal where the agent is the mere alter ego of the principal "because the party that should have been informed was the agent itself albeit in its capacity as principal." *McHale v. Citibank, N.A.,* 420 B.R. at 202 (internal citations omitted).

The Trustee claims that the sole actor rule does not apply in this case because the

Defendant had an obligation to warn Agape's innocent investors of Cosmo's actions, and this failure to warn precludes any imputation of Cosmo's knowledge to Agape.  In the alternative, the Trustee asserts that the Defendant's own misconduct in violating the applicable New York Disciplinary Rules requires the Defendant to forfeit any legal fees received that are tainted by the Defendant's breach of its fiduciary duty to Agape.  The Court is not aware of any decisions, nor does the Trustee cite to any, which expand the exception to the *Wagoner* rule to include sole actors like Cosmo based on the fact that innocent investors were harmed.  The sole actor exception applies regardless of whether the Defendant could have reached out to investors to advise them that Cosmo was looting Agape.  So long as Cosmo was the only person at Agape to whom the Defendant could have reported the looting, and Cosmo was doing the looting, the sole actor exception applies.

Any claim that Agape was injured as a result of the Defendant's violation of its ethical obligations must be dismissed under the *Wagoner* rule as well.  As stated above, the *Wagoner* rule works to deprive a bankruptcy trustee of standing to sue on behalf of a corporation that suffered a direct injury from a third party's actions if the corporation's sole stockholder and decision maker participated in the wrongdoing.  *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d at 119.  In the case of Cosmo's looting, the Trustee does not dispute that Cosmo engineered the entire scheme, and the Defendant's alleged actions facilitated Cosmo's plan.  Because the Trustee is deemed to be a party to the scheme, the *Wagoner* rule bars the Trustee from maintaining a suit to recover for any injuries suffered by Agape.  *See Mediators,* 105 F.3d at 824 (Second Circuit affirmed dismissal of claims brought by a creditors' committee against a bank and a law firm charged with aiding and abetting a scheme by the debtor's principals to

appropriate corporate assets for themselves for little or no consideration.  The Circuit Court held

that the claims belonged to the creditors because the third parties cooperated in the misconduct

initiated by the principals.).  As a result, the Trustee's allegation that Agape suffered a direct

injury (either in the form of stolen profits or in the payment of legal fees) does not cure the

Trustee's lack of standing under the *Wagoner* rule.  It is Cosmo's role as the mastermind of the

looting that deprives the Trustee of standing to bring these claims.

   With respect to the whether the Trustee can maintain his claim against the Defendant for

its failure to advise Agape to correct misrepresentations Agape made to the public regarding i)

the true nature of Agape's business activities and ii) Agape's sale of unregistered securities in

violation of the Securities Act, the Court finds in favor of the Defendant.   These claims sound in

negligence, and, if proven, resulted in harm to the investors, not Agape.  Because the investors,

and not Agape, were actually harmed, the Trustee lacks standing to bring these claims.  As the

Second Circuit held in *Hirsch,* "claims predicated upon the distribution of misleading

[information] to investors [in an investment] are the property of those investors, and may be

asserted only by them and to the exclusion of [the trustee in bankruptcy]."  *Hirsch,* 72 F.3d at

1094.

   To the extent the Trustee alleges that these actions harmed Agape's estate as distinct

from the creditors of the estate, the allegations in the Complaint do not support this finding.  If

anything, the Defendant's alleged negligence served to extend the scheme, for the benefit of

Agape <u>and</u> its principal. These incidental benefits to Cosmo do not place these claims outside the

reach of the *Wagoner* rule by way of the adverse interest exception because this exception does

not apply to conduct that benefits the corporation.  As the New York Court of Appeals recently

ruled in *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 938 N.E.2d 941 (2010), "'the Trustee [in bankruptcy] must allege, not that the . . . insiders intended to, or to some extent did, benefit from their scheme, but that the corporation was *harmed* by the scheme, rather than being one of its beneficiaries.'" 15 N.Y. 3d at 461 (citing *Kirschner v. Grant Thornton LLP,* 2009 WL 1286326, at *7, 2009 US Dist. LEXIS 32581, at *27 (2009)). Even if the adverse interest exception applies, the sole actor rule applies as well, rendering the adverse interest exception unavailable.

Finally, the Trustee alleges that the Defendant's failure to advise Cosmo that the investments were securities, which required compliance with the SEC registration requirements, caused direct harm to Agape. This claim, if true, does not give rise to any cause of action by the Trustee other than negligence. While investors deceived by an attorney's representations may have claims against such attorneys under applicable Securities Act provisions, the client's only cause of action against the attorney is one for malpractice or negligence, and not for aiding and abetting or conspiracy to violate applicable securities laws.[7] *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin,* 135 F.3d 837, 841 (2d Cir. 1998) (A law firm may not be found liable in a private action for conspiring or aiding and abetting a violation of § 10(b) or Rule 10b-5 of the Securities Act.) (citing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164 (1994) (other citations omitted)). The Trustee does not point to any direct injury Agape incurred, other than the liability to investors that flowed from the Ponzi scheme. Because the investors, not Agape, incurred damages, the Trustee does not have standing to sue the Defendant under these theories. The harm flowing from the Defendant's improper advice

---

[7]The Court does not comment on whether the investors have a viable claim against the Defendant under any provisions of the Securities Act or under any other legal theory.

was not suffered by Agape, but by Agape's investors.  As such, these allegations may give rise to claims by the creditors of Agape, but not by the Trustee.

To the extent that the Trustee alleges that the improper advice by the Defendant harmed Agape directly, the *Wagoner* rule would apply to bar such claims as well, because Cosmo is a party to, or participant in, the wrongful conduct.  *Breeden v. Kirkpatrick & Lockhart, LLP,* 268 B.R. at 709. The Complaint, however, can be read to allege that the Defendant failed to properly advise Agape of the relevant securities laws, and Agape did not participate in or endorse this misconduct.  However, this claim cannot withstand the pleading requirements of Rule 8.  A malpractice action under New York law requires that the injured party plead that the defendant took action, which was below the reasonable standard of care, and that the action was the proximate and actual cause of the injury.  In this case, the allegations contained in the Complaint belie any argument that the Defendant's actions were the actual and proximate cause of the injury sustained.  In his allocution, "Cosmo admitted that he operated Agape as a Ponzi scheme" (Complaint, ¶ 36) and the Ponzi scheme was in existence and functioning as such from 2003, but it is undisputed that the Defendant was not retained as counsel to Agape until 2007.  The scheme never included registering the investments as securities.  The allegation that the Defendant's legal advice proximately caused damages to Agape does not meet the plausibility standard the Supreme Court set forth in *Iqbal.*

Based on the allegations set forth in the Complaint, it is not plausible to conclude that the Defendant's legal advice affected Cosmo's decision not to register the investments as securities as of 2007, when the Ponzi scheme was in full swing.  It does not appear from the Complaint that Cosmo ever had any intention of complying with the applicable Securities Act requirements, as

to do so would threaten his entire scheme.  Where the principal and the agent are the same

person and were actively engaged in a scheme to defraud investors since 2003, it is not plausible

to conclude that the Defendant's breach of duty to the agent four years after the fraud began

caused any direct injury to Agape. Therefore, Counts Nine though Eleven shall be dismissed.

### ii.  Count Eight

In Count Eight of the Complaint, the Trustee seeks contribution from the Defendant

under the New York contribution statute. As set forth in the Complaint the underlying claims

giving rise to contribution are malpractice and/or aiding and abetting Cosmo's breach of his

fiduciary duties owed to Agape.  Section 1401 of the CPLR governs claims for contribution

under New York law and provides, in pertinent part, as follows:

> [T]wo or more persons who are subject to liability for damages for the same
> personal injury, injury to property or wrongful death, may claim contribution
> among them whether or not an action has been brought or a judgment has been
> rendered against the person from whom contribution is sought.

CPLR § 1401 (McKinney 1997).  The amount of contribution to which a person may be entitled

is "the excess paid by him over and above his equitable share of the judgment recovered by the

injured party; but no person shall be required to contribute an amount greater than his equitable

share. . . to be determined in accordance with the relative culpability of each person liable for

contribution."  CPLR § 1402 (McKinney 1997).  New York courts have held that "the policy of

the law, as declared by the Legislature in CPLR 1401, is to allow contribution unless it is clear

that the legislative policy which led to the passage of the statute would be frustrated by the

granting of contribution in favor of the person who violated the statute." *Zone v. Oatka Rest. &*

*Lounge, Inc.,* 68 N.Y.2d 824, 825-26, 499 N.E.2d 869, 869 (1986) (internal citations omitted).

Under the New York contribution statute, a person subject to liability in tort

for damages may assert a contribution claim against another tortfeasor in a separate action.

CPLR § 1403 (McKinney 1997).  The right of contribution exists among parties which are 1)

subject to liability for damages, 2) under the same of different theories of law, 3) for the same

injury.  *See Nassau Roofing & Sheet Metal, Co., Inc. v. Facilities Dev. Corp.,* 71 N.Y.2d 599,

603, 528 N.Y.S.2d 516, 523 N.E.2d 803 (1988); *see also Perkins Eastman Architects, P.C. v.

Thor Eng'rs*, *P.A.*, 769 F. Supp. 2d 322, 327 (S.D.N.Y. 2011) (The critical requirement for a

contribution claim under New York law is that the breach of duty by the contributing party had a

part in causing or exacerbating the injury for which contribution is sought.).  Under contribution,

a party subject to liability in tort may sue to hold a joint, concurrent, successive, independent,

alternative, and/or intentional torfeasor liable for any amounts the party paid in excess of its fair

share.  *Nassau Roofing & Sheet Metal Co., Inc., v. Facilities Dev. Corp.,* 71 N.Y.2d at 603, 523

N.E.2d at 805.

   "[A] defendant may seek contribution from a third party even if the injured plaintiff has

no direct right of recovery against that party, either because of a procedural bar or because of a

substantive legal rule."  *Raquet v. Braun,* 90 N.Y.2d 177, 182, 681 N.E.2d 404 (1997) (citations

omitted).  Contribution may also be asserted where the third party tortfeasor has no duty to the

injured party.  *Id.*  In addition, if there was a breach of duty running from the third party

tortfeasor to the defendant, a contribution claim may lie, provided the breach of that duty by the

third party tortfeasor caused or augmented the injury for which contribution is being sought.  *Id.*

(citations omitted).  However, the party seeking contribution must make out all of the essential

elements of a cause of action against the proposed contributor.  *Jordan v. Madison Leasing Co.,*

596 F. Supp. 707, 710 (S.D.N.Y. 1984) (citing *Lodino v. Health Ins. Plan of Greater New York,*

*Inc.,* 93 Misc.2d 18, 401 N.Y.S.2d 950, 951 (1977)).  Therefore, if the underlying cause of action is subject to dismissal for failure to state a claim under Rule 12(b)(6) or failure to plead fraud with particularity under Rule 9(b), the contribution claim will fail as well.  *Id.* The applicability of *in pari delicto* as a defense to the underlying claim does not bar a claim for contribution, "since the entire purpose of CPLR article 14 is to codify the changes in tort law as to enable contribution among tortfeasors announced by the [New York] Court of Appeals in *Dole v. Dow Chem. Co.* (30 N.Y.2d 143 [1972]; *see Board of Educ. of Hudson City School Dist. v. Sargent, Webster, Crenshaw & Folley*, 125 A.D.2d 27, 29 [1987], *aff'd* 71 N.Y.2d 21 [1987].*" Rosenbach v. Diversified Group, Inc.,* 85 A.D.3d 569, 570, 926 N.Y.S.2d 49 (1st Dept 2011).

In the case before the Court, the Trustee seeks contribution from the Defendant under the theory that the Defendant owed a duty to the Trustee, the Defendant breached that duty, and the breach caused or augmented the injuries suffered by Agape's investors.  Under the Trustee's argument, while the Defendant may not be directly liable to Agape's investors, and may not owe them any legal duty of care, the Trustee may nevertheless seek contribution from the Defendant for any amounts the Trustee pays to creditors in satisfaction of their allowed claims in excess of what the claims would have been, but for the conduct of the Defendant.  The underlying basis for the right to seek contribution is the duty of care the Defendant owed to Agape, and the Defendant's breach of that duty.

The Defendant makes a series of arguments in favor of dismissing the contribution claim, some of which are specific to the allegations contained in the Complaint, and some of which are broader in scope, based in part on the mere fact that the bankruptcy trustee is the plaintiff in this case.  The first argument presented by the Defendant is that the Trustee has no right to assert

any claim for contribution in this case as a matter of law. To support his argument, the Defendant cites to *Picard v. HSBC Bank PLC,* No. 11 CIV 763 (JSR), 2011 WL 3200298 (S.D.N.Y. Jul. 28, 2011) ("*Picard v. HSBC*"), and *Picard v. JPMorgan Chase & Co.,* Nos. 11 civ. 913 (CM), 11 civ. 4212 (CM), 2001 WL 5170434 S.D.N.Y. Nov. 11, 2011) ("*Picard v. JPMorgan Chase*").  In both cases, the District Court for the Southern District of New York ruled that Picard, as the trustee appointed in the Bernard L. Madoff Investment Securities liquidation proceeding commenced under the Securities Investor Protection Act ("SIPA"), could not rely on New York law to seek contribution from professionals retained by the debtor where a right to contribution was not expressly provided in the federal statutory scheme set forth under SIPA. Both decisions are predicated on the same legal conclusion, that because the right to contribution did not exist in the SIPA statute itself, Picard had no corresponding right to bring a contribution action.  The Defendant seeks to apply the findings in these cases to the facts in this case.

     This Court is not persuaded that the reasoning underlying the legal conclusions which form the basis for these decisions is applicable to this case.  Under the Bankruptcy Code, the Trustee is armed with all of the rights that the debtor had as of the petition date, which includes all causes of action the debtor could have brought prepetition.  *Hirsch v. Arthur Andersen & Co.,* 72 F.3d at 1093.  The Bankruptcy Code does not provide a specific list of all of the claims a trustee may maintain, but there is nothing in the Bankruptcy Code which limits the trustee to some, but not all, of the claims a debtor could have brought prepetition.  To the extent the Defendant reads *Picard v. JPMorgan Chase* and *Picard v. HSBC* to limit a bankruptcy trustee's right to commence an action for contribution, the Court declines to adopt this conclusion.  Both of those cases concern a trustee appointed under SIPA, which may contain restrictions on

maintaining contribution claims that are inapplicable to the Trustee in this case.  To the extent that the rights of the Trustee and a bankruptcy trustee appointed under SIPA to commence a claim on behalf of a debtor are identical, the Court declines to adopt the reasoning of these earlier cases.  The fact that the Bankruptcy Code does not expressly authorize a trustee to seek contribution does not limit a trustee's right to bring whatever action, including an action for contribution, that a debtor could have brought prepetition.  While the Bankruptcy Code directs the Trustee to pay claims filed in the case pursuant to a statutory scheme, the duty to follow the statutory mandate seemingly has little to do with whether a trustee may seek contribution for the benefit of the estate.  The Trustee's right to bring a contribution claim is derived from state law, made applicable by Bankruptcy Code § 544, and not from Bankruptcy Code § 726 or any other Bankruptcy Code provision.  *Hill v. Day (In re Today's Destiny, Inc.*), 388 B.R. 737, 751 (Bankr. S.D. Tex. 2008).  To the extent the Trustee's right to bring a contribution claim is based on the federal securities laws, "[i]t is well-established that contribution is a remedy available in cases involving violations of the federal securities law, but it is limited solely to recovery among joint tortfeasors."  *Jordan v. Madison Leasing Co.,* 596 F. Supp. at 711 (citing *Stratton Group Ltd. v. Sprayregen,* 466 F. Supp. 1180 (S.D.N.Y. 1979)). Aside from the standing limitations imposed by the *Wagoner* rule, the Trustee's right to maintain a contribution action is based on whether the contribution claim asserted falls within the requirements imposed by the CPLR.

The fact that the Trustee is charged with making a distribution to creditors of Agape's estate does not invalidate the contribution claim.  Judge Rakoff determined that the trustee's obligation to pay claims in the Madoff SIPA proceeding was not equivalent to the trustee being "subject to liability" for damages as required by the New York contribution statute, because a

SIPA trustee is merely carrying out his or her functions when funds are distributed. *Picard v. HSBC,* 454 B.R. at 38. However, the trustee's **obligation** to make distributions in a bankruptcy case is dependent upon the filing and allowance of claims, not on the distribution scheme set forth in the Bankruptcy Code. So long as an action has been commenced by the injured parties (in this case the Agape investors) against the Agape estate, the requirement that the defendant be "subject to liability" is satisfied. CPLR § 1403 (McKinney 1997). *See also Nassau Roofing & Sheet Metal Co., Inc., v. Facilities Dev. Corp.,* 71 N.Y.2d at 602, 523 N.E.2d 803. To meet this requirement, the Trustee relies on the theory that "the filing . . . of [a] proof of claim is analogous to the commencement of an action within the bankruptcy proceeding", adopted by the Second Circuit in *Nortex Trading Corp. v. Newfield,* 311 F.2d 163, 164 (2d Cir. 1962). The Court finds that the filing of claims in this case, which are subsequently allowed, is sufficient at this stage to satisfy the requirement that the Trustee be "subject to liability" under the New York contribution statute.

The remaining arguments asserted by the Defendant are: 1) the *Wagoner* rule, which deprives the Trustee of standing to sue the Defendant on the underlying claims, bars the Trustee from maintaining an action for contribution against the Defendant, 2) the Trustee and the Defendant do not have liability for the same injury, which is a required element under contribution, and 3) based on the overwhelming degree of Agape's culpability, the Trustee will never pay out more than Agape's fair share of damages to the injured investors, and without actual overpayment by the Trustee, a contribution claim cannot be maintained.

First, the Court shall consider the effect of the *Wagoner* rule on the contribution claim. Courts agree that a claim for contribution is not defeated by the doctrine of *in pari delicto.*

*Rosenbach v. Diversified Group, Inc.,* 85 A.D.3d at 571, 926 N.Y.S.2d at 52.  Any personal defenses the third party may have against the injured party will not preclude contribution. *Ackerman v. Southern Wood Piedmont Co. et al.,* 409 F. Supp. 469, 471 (E.D.N.Y. 1976).

However, an action for contribution "will not lie unless all the essential elements of a cause of action against the proposed contributor can be made out."  *Calcutti v. SBU, Inc*., 273 F. Supp. 2d 488, 497 (S.D.N.Y. 2003) (citing *Jordan v. Madison Leasing Co.,* 596 F. Supp. 707, 710 (S.D.N.Y. 1984) (other citation omitted)).  The question for the Court to resolve is whether the *Wagoner* rule, which bars the Trustee from suing the Defendant for negligence or aiding and abetting Cosmo's breach of his fiduciary duties to Agape, bars the Trustee's claim for contribution as well.  The *Wagoner* rule is based on the same underlying principles as *in pari delicto*, but the *Wagoner* rule has vastly different consequences in its application.  The *Wagoner* rule is not a defense to a claim; it is a complete bar to a claim.  As such, the Trustee is not entitled to seek relief on the underlying claims.  Because the Defendant can never be "subject to liability" for the Trustee's underlying claims (for malpractice and aiding and abetting breach of Cosmo's fiduciary duty), the contribution claims fail as well.

This principle has been applied by at least one bankruptcy court.  In *Devon Mobile Commc'ns Liquidating Trust v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.),* 322 B.R. 509 (Bankr. S.D.N.Y. 2005), the Bankruptcy Court for the Southern District of New York denied a motion by a defendant to file a third party complaint against two parties for contribution in connection with a preference and fraudulent transfer action commenced against the defendant by a liquidating trust, as successor in interest to a limited partnership.  The Bankruptcy Court determined that the defendant lacked standing to commence the third party

action for contribution because the underlying claim against insiders of the transferor for breach of fiduciary duty to the transferor belonged solely to the transferor.  The bankruptcy court held that only the trustee or the liquidating trust had standing to bring breach of fiduciary duty claims against insiders.  As the bankruptcy court recognized,  "[t]his standing requirement cannot be circumvented by the expedient of filing a third-party complaint and denominating the breach of fiduciary claims as claims for contribution and indemnity." *Id.* at 528.

In *Goldin v. Primavera Famlienstiftung (In re Granite Partners),* 194 B.R. 318 (S.D.N.Y. 1996), the Bankruptcy Court dealt with a similar issue in a different context.  An individual invested in Granite Partners at the advice of TAG associates, a financial advisor, and its managing directors.  Granite Partners, however, deviated from a conservative market strategy it promised to follow, which led to Granite's collapse.  Granite filed for bankruptcy under Chapter 11.  TAG filed a claim against the bankruptcy estate for contribution.  TAG also filed a third party action against the insiders of Granite for breach of fiduciary duty and negligence.  The trustee sought to enjoin TAG from bringing the contribution action against the insiders of Granite as the action violated the automatic stay.  The Court held that only the trustee of Granite had standing to bring a breach of fiduciary action against its insiders.  *Id.* at 334.  TAG could not assert claims that it lacked standing to bring "under the guise of contribution" and it violated the automatic stay in doing so.  *Id.*

To the extent that the underlying claims are not barred by the *Wagoner* rule, the Trustee's contribution claims must still be dismissed.  The only underlying claim which could withstand dismissal under the *Wagoner* rule is the claim for malpractice.  The Defendant's failure to advise Agape that the investments were subject to registration requirements under the Securities Act

may give rise to an argument that Agape did not participate in the formulation of this advice. However, as discussed above, this portion of the Complaint cannot survive the pleading requirements set forth in *Ashcroft v. Iqbal*. The facts as pleaded do not permit the Court to draw the inference that the Defendant is liable to Agape for the misconduct as alleged. The failure to register the investments as securities was a part of the Ponzi scheme at the outset and helped prevent detection of the scheme. Unlike the churning claim the bankruptcy trustee brought against the professionals in *Wagoner*, which was clearly distinct from the alleged fraudulent scheme against the bankrupt corporation's investors, the alleged wrongdoing by the Defendant is too closely tied to the Ponzi scheme for the Court to find that the Defendant could be liable for any injury suffered by Agape.

The Trustee's lack of standing to sue the Defendant for Agape's injuries in which Agape participated does not deprive the investors from bringing whatever action they may have against the Defendant. The contribution claim relies solely on breach of the Defendant's duty to Agape and does not seek contribution based on any tort committed by the Defendant against the investors directly. Because the *Wagoner* rule bars the majority of the underlying claims in the contribution action, and the remaining claim, based on the Defendant's failure to properly advise Agape regarding the applicable registration requirements under the Securities Act, must be dismissed under Rule 8, the Eighth Claim shall be dismissed. Therefore, the Court need not consider the Defendant's remaining arguments regarding the Eighth Claim.

### 5. *Tolling Agreement*

The only remaining grounds cited by the Defendant for dismissal of the Complaint relate to the Tolling Agreement. The Court declines to rule on whether the Trustee violated the Tolling

Agreement and, if so, whether the proper sanction is dismissal of this adversary proceeding.  The better course of conduct is to rule on the merits of the claims set forth in the adversary proceeding, not to decide this matter based on events that are extraneous to the allegations set forth in the Complaint.

### *Conclusion*

For the reasons set forth above, the Motion is denied as to Counts One through Six, and is granted as to Counts Seven through Eleven.  The Court shall enter an order simultaneously with this Memorandum Decision.

Dated: Central Islip, New York
      February 21, 2012                     By: ___*/s/ Robert E. Grossman*___
                                     Robert E. Grossman
                                     United States Bankruptcy Judge